Good morning. May it please the court. My name is Jessica Weltman. I'm an attorney with the Federal Defenders of Montana, and today I represent Mr. William Williams. Mr. Williams was charged and convicted of receipt of child pornography, and he received, in addition to 15 years of imprisonment, lifetime supervised release. Now, the government has written offenders convicted of receipt of child pornography are culpable in light of the serious nature of their crime and their tendency to be pedophiles and recidivists. This is a very serious factor which our society and the legislature and the courts have taken into account. But even if this is true, lifetime supervised release is both unreasonable and cruel, for a variety of reasons, including what supervised release actually entails. What do we do with the Sentencing Commission report that indicates that that sentence is common, and specifically, 20.5% of all sentences include lifetime supervised release? How can that be a violation of the Eighth Amendment? I guess, although it's more common than cases where the Eighth Amendment has found to be violated, I would argue that's not common in light of the number of sex offenders where it's not half, it's only, it's well below that amount. Are you making both a categorical and as applied argument here? I am, Your Honor. Let me ask you, how about the states? Do the states, does the state of Washington impose lifetime supervision for sex offenders? You know, I don't know the answer to that question. Is there any state in the country? I don't know the answer to that question. I know that federally, by statute, and by the sentencing guidelines that they have, in fact, Well, the report that Judge O'Scanlan mentioned shows that federal judges have been imposing lifetime supervised release in sex offense cases in a number of cases since Congress passed the PROTECT Act. And while I recognize that's true, I think that we need to take a second look at supervised release when we're not only protecting the sex offenses or against sex offenses, but a person when they're on supervised release forever, any act that's not necessarily criminal, if they fail to call their probation officer, if they fail to call before they move, for that reason they can be sent back to prison. And additional legislative enactments allowing there to be lifetime supervision. There's evidence in the record or in that report that, again, that Judge O'Scanlan referred to, that recidivism, it's a fairly high rate of recidivism for sex offenders. Counsel, you do not challenge the trial court's process of imposing the sentence. In other words, he has complied with statute, he has considered the facts, and he has come to a result, and you're asking us to reverse it. What we challenge, Your Honor, is the fact that the district court needed to further, there need to be further requirements before a supervised release can be imposed, and looking at the information that's available in terms of what experts have said about what supervised release. The district court did state his reasons for giving the sentence, as you said, and looked at the 3553A sentencing factors. But what are these additional requirements you want us to take into account? What we'd like you to take into account, or for the district court to take into account, is when supervised release, because it's such, it's forever. Before that can happen, there needs to be some methodology. And right now, the district courts are unable to, there's a lack of a clear and objective standard. The district court followed all of the 3553A factors, did it not? The district court did consider those factors, but the result that the district court reached is what we are claiming is unreasonable. And the reason that it's unreasonable, in light of the fact that this is going on, supervised release for a life, is going on forever, and it doesn't take into account what the purposes of supervised release are, which, in part, is to go ahead and to make sure that a person is rehabilitated and to make sure that someone reenters into the community. When that never happens. Also to monitor the person's behavior as well. That's true. And part of what the idea with lifetime supervised release, because it's going on forever, the judge is never making a reasonable decision about this has to happen forever for this, or the judge has said this has to go on forever for the person. But that cannot be, what we're arguing is that it cannot be reasonable. The sentence may be imposed forever today. There are a number of paths out of it. He may serve his term very well, and they feel he's psychologically suited to be returned to society, and they reduce the sentence. Or they get a pardon for him, and he would be free again. But as long as he's willing to engage in this kind of conduct, the sentence is going to stay in force. Well, and we would just argue that that's not enough, that there is the capacity at some point for him to be removed from supervised release when only 12% of cases that ever happens. We don't know what that purpose is. And for this to be set at the outset, where he has supervised release for the rest of his life, without looking at his capacity to appeal. To evaluate today is conduct 5 years, 10 years, 20 years downstream. You can't do it. It's difficult. And so the crux of the argument is just because that's a difficult thing to do, there shouldn't be supervised release forever, which doesn't make that opportunity. And the reason for that being is that you look at the individual, but you also look at the fact that right now, you know,  But the fact that the experts who are trying to understand what it means for someone to view images of child pornography, what that means, it's unclear. It keeps changing day by day about what that really means. Well, if you look at the facts of his particular case, the judge was particularly troubled. Isn't that right? The judge did look at him specifically. He had some prior convictions. He had one prior conviction from 10 years. And he said some things to the – he made some statements to his probation officer or to the investigators, I can't remember who, about his fantasies, correct? He did. And that is something that the judge takes into account. But still we argue that it cannot be reasonable to impose such a sentence because you're going against the actual – some of the purposes of supervised release. What about the Cope case, June of 2008, our case? Yes. And in the Cope case, I think the Cope case is a case where this court has said that it was reasonable to apply the supervised release, but it's not reasonable in every case. And so I think – Lifetime supervised release. Lifetime supervised release, yes. So we have a Ninth Circuit case specifically holding that lifetime supervised release is okay. Given the facts specific to that case is how I read that holding, Your Honor. May I reserve my time for later? Oh, certainly. You certainly may. Thank you. We'll hear from the governor. Thank you. Good morning. My name is Cindy Peterson, and I am here from the District of Montana on behalf of the government this morning. A couple of things that I want to address before going into some of the other issues that were raised in the briefs is one thing in particular that the appellant has said is that this sentence of supervised release doesn't consider the main purpose, primarily rehabilitation. And I disagree with that statement in particular because if the court looks at the special conditions that were included as part of the supervised release, there are rehabilitative purposes and issues within that, primarily the sex offender treatment in addition to the alcohol treatment. And all of these conditions that relate to that, the restriction on the Internet, the drug and alcohol testing, the restriction on minors, all of these restrictions are restrictions that the defendant holds the key to. Because when the district judge imposed these conditions, he specifically allowed that these conditions could be modified by the probation officer. And so because of that, the defendant basically holds the key to his own freedom. It's not, as the appellant is suggesting, that he is just going to be restricted and locked up for the rest of his life. It's much less significant than that. I believe that the appellant has tried to equate this with imprisonment, such as what was the case in Graham, and it's just comparing apples to oranges. We're not talking about the same kind of restrictions on an individual's freedom as we are in those other kinds of cases. As Your Honor has pointed out, there are a number of paths out of this where he can actually have less restrictive conditions of supervised release. In terms of going against some of the factors, there was that reference also that a sentence of lifetime supervised release goes against some of the penological factors that were referred to in Graham and Ewing. But what's important to realize is that the courts have consistently said that it doesn't have to be all three of the factors. It doesn't have to be rehabilitation, incapacitation, and deterrence. Only one of them, one or some, is sufficient. And as they found in Ewing, incapacitation is sufficient. And in this particular case, I would urge the court to follow along that same lines. I believe that incapacitation, as it relates to Mr. Williams, does justify the lifetime supervised release. And the judge is correct, Judge Paez is correct, that it's both a challenge on the categorical and specifically, but in both of those challenges there's no way that this is cruel and unusual punishment. The instances, there's two points. The instances that the courts gave as examples, for example, in Ewing, when it talked about the rare cases where you have the cases, their sentences are grossly disproportionate. The example was parking, parking too long and ending up with a life imprisonment sentence. That's an extreme case. Another one was the Solemn case, which I think also can be differentiated, because they're talking about writing a $100 check and ending up with lifetime supervised release. That's not the kind of grossly disproportionate sentence that we're faced with in this particular instance. And so I would argue that specifically as it relates to Williams, certainly this is not an extreme sentence when you look at the culpability of the offender, the nature of his crime, his history. But then also when you look at the categorical approach, as the court looks at whether or not there's a national consensus against these kind of sentencing practices, one of the issues that's important that this court found in Miners is that we don't even get to the inference of gross disproportionality because of the very nature of this crime. This is not the kind of case that justifies that inference. So we don't even get into comparing sentences with other jurisdictions and other areas. So with that, Your Honor, the last thing that I would argue, unless the court has more sentences. How does the government interpret the Cope case, our Cope case? Your Honor, I believe that it's interpreted to find that it's not, that these types of crimes that from life to, I'm sorry, from five years to lifetime supervised release is not cruel and unusual punishment. I just believe that it's that straightforward. And again, Your Honor, a large part of that comes back down to the penological interest of incapacitation. There's a point in the briefing where the appellant tries to argue that he is not as culpable because he's simply a receiver, and so therefore he should not be subject to lifetime supervised release, such as somebody who may be transporting or distributing. But that assertion is just wrong to the point of absurdity because when you consider the fact that this entire industry causes physiological and emotional and mental harm to children, and he's contributing to that industry, of course he is culpable. And this is exactly the kind of individual, as the district court indicated, that Congress had in mind in allowing lifetime supervised release. And certainly when you start getting into the specifics of Mr. Williams, he is exactly the individual who warrants lifetime supervised release, which somewhat rolls over into the last argument that the appellant has made, which is whether or not this is a substantively unreasonable sentence. And given the history of this particular individual, there's just no way in the government's mind that it is. It's within the guidelines. It's consistent with the guideline policy statement. He's a prior hands-on offender. He has not only committed prior crimes and then got out and committed this crime where he admitted that he was looking for very violent images, that that's what he was going after. But when you look at his prior conduct while he was on probation, he's consistently violated his probation, not once but actually twice. And those violations were not minor violations. They were serious violations where he was trying to have access to children, where he was not completing his sex offender treatment. And so given that, Your Honor, I would simply point out that Mr. Williams' history and characteristics certainly warrant the sentence is substantively reasonable, whether it's specific or categorically, the sentence is not cruel and unusual. Thank you, Counsel. Thank you. Ms. Weltman, you have some reserved time. Your Honor, you had asked several times about the Cope case, and I would just reiterate that the case itself says that other cases upholding lifetime terms of supervised release do not necessarily render the sentence reasonable in this particular case. And Cope also did not reach or even discuss an Eighth Amendment issue. So I would just simply bring those two points forward. Counsel, the government has discussed So you're saying Cope does not control this case. Cope doesn't make a categorical rule that would control this case. Yes, Your Honor. The government also discussed incapacitation. Although it's pretty influential with respect to the as-applied argument. In his case, the facts of Mr. Williams' case. I mean, I think that it's authority that the court should look at in making its determination, but I don't believe that it controls in the case. In terms of incapacitation, I would just turn to the Graham case, where in that case they said, even at the outset, even if today we feel that in that case it was lifetime imprisonment, today lifetime imprisonment is necessary and appropriate. And even if while the person's in prison, he shows other bad actions and ways of going about what he's doing, even then it cannot be, it is cruel and unusual, rather, to punish someone at this point because we can't, it's happened at the outset. We don't know what's going to happen in the future. And while supervised release is vastly different, because of its unique circumstances of being sent to prison for many things that are not, in fact, crimes or new offenses, to look at that to say at the outset there needs to be a better methodology and the courts need to take current research into account in trying to determine whether lifetime supervised release is appropriate. Because, in fact, if someone messes up on supervised release, they have the, the judge has the opportunity to put them in prison and at that point say, you know what, this person has messed up truly. Lifetime supervised release perhaps is appropriate. And to take into account the changing, what's changing a lot is research about this field because people just don't fully understand what it means. Thank you very much, counsel. The case just argued will be submitted for decision.
judges: Beezer, O'scannlain, Paez